879 A.2d 162

**Tyree FORD, A Minor, By and Through His Parent and Guardian, Louise PRINGLE, Appellee,**

v.

**PHILADELPHIA HOUSING AUTHORITY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 12, 2005.

Decided July 20, 2005.

Susan Joan French, Esq., Virginia Lynn Hogben, Esq., Alan C. Kessler, Esq., Philadelphia, for Philadelphia Housing Authority.

David J. Alexander, Esq., Philadelphia, for Tyree Ford Louis R. Pringle.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

### ORDER

PER CURIAM.

Appeal dismissed as having been improvidently granted.

Justice NEWMAN files a dissenting statement in which Justice CASTILLE and EAKIN join.

Justice NEWMAN, dissenting.

I respectfully dissent from the Order of the Court dismissing this matter as Improvidently Granted. I believe that the Philadelphia Housing Authority ("PHA") raised an important

question not yet answered by this Court and about which the Commonwealth and Superior Courts are divided.[1]

## FACTS AND PROCEDURAL HISTORY

PHA owned the residence at 2114 Taney Terrace ("the residence"), a low-income housing unit constructed prior to 1978 that contained lead-based paints. Louise Pringle ("Pringle") began leasing the residence on November 19, 1990, and lived there with her children until November 1994. Although required to, PHA did not notify Pringle of the lead paint in her residence and the associated dangers. Further, PHA did not maintain the premises, allowing paint to peel and chip. The paint was loosening in areas throughout the interior of the residence, specifically on chewable and high-friction surfaces.

Appellee Tyree Ford ("Ford") was born on October 26, 1991, and lived with his mother, Pringle, at the residence. He would ingest the paint chips that had fallen off the walls and surfaces of his home. As early as one-year-old, Ford tested positive for childhood lead poisoning. His chronic lead poisoning continued for three years, and in September of 1994, his blood lead level became dangerously elevated. He was admitted to the hospital and began three weeks of treatment to reduce the level of lead in his blood. On August 5, 1994, PHA received notice that Ford had elevated blood lead levels. On September 22, 1994, PHA received a second notice when Ford experienced another heightened blood lead level. PHA then contracted for lead testing of the residence. After receiving the test results, PHA notified Pringle of the presence of lead in the residence. As a result of the lead exposure, Ford suffers from brain damage.

More than four years later, Pringle filed a Complaint against PHA on behalf of Ford.[2] After a bench trial, the Court

1. *See Ford v. Philadelphia Hous. Auth.*, 848 A.2d 1038 (Pa.Cmwlth. 2004); *Wilson v. Philadelphia Hous. Auth.*, 735 A.2d 172 (Pa.Cmwlth. 1999); *Downing v. Philadelphia Hous. Auth.*, 148 Pa.Cmwlth. 225, 610 A.2d 535 (1992), *appeal denied*, 532 Pa. 658, 615 A.2d 1314 (1992); *Battle v. Philadelphia Hous. Auth.*, 406 Pa.Super. 578, 594 A.2d 769 (1991).

2. Pringle filed a fifteen count Complaint alleging the following causes of action: (1) negligence and non-compliance; (2) breach of implied

of Common Pleas of Philadelphia County ("trial court") found Pringle's evidence more compelling than that of PHA; it therefore entered judgment in favor of Pringle, holding that PHA was negligent and negligent *per se*, and that PHA breached an implied warranty of habitability. Ford and Pringle were awarded damages of $210,000.00 on the negligence claim and of $5,832.00 on the breach of implied warranty of habitability claim. The trial court found against Pringle and Ford on the remaining counts and against PHA on its counterclaim of contributory negligence.

PHA filed a timely Post–Trial Motion claiming that it was entitled to a Judgment as a Matter of Law because Ford's claims were barred by Pringle's failure to comply with 42 Pa.C.S. § 5522(a) ("Section 5522(a)").[3] The trial court denied PHA's Motion for Post–Trial Relief.

warranty of habitability; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) unfair trade practices and violations of the Consumer Protection Law; (6) strict liability; (7) ultrahazardous activity; (8) third party beneficiary, implied right of action; (9) violation of 42 U.S.C. § 1983; (10) violation of PHA HUD Annual Contributions Contract; (11) loss of consortium; (12) punitive damages; (13) violation of the Residential Lead Based Paint Hazard Reduction Act of 1992; (14) violation of Phila. Code § 6–403(5); and (15) violation of Phila. Code §§ 6–801–6–813.

3. Notice prerequisite to action against government unit.—

(1) Within six months from the date that any injury was sustained or any cause of action accrued, any person who is about to commence any civil action or proceeding within this Commonwealth or elsewhere against a government unit for damages on account of any injury to his person or property under Chapter 85 (relating to matters affecting government units) or otherwise shall file in the office of the government unit, and if the action is against a Commonwealth agency for damages, then also file in the office of the Attorney General, a statement in writing, signed by or in his behalf, setting forth:

(i) The name and residence address of the person to whom the cause of action has accrued.

(ii) The name and residence address of the person injured.

(iii) The date and hour of the accident.

(iv) The approximate location where the accident occurred.

(v) The name and residence or office address of any attending physician.

(2) If the statement provided for by this subsection is not filed, any civil action or proceeding commenced against the government unit more than six months after the date of injury to person or property shall be dismissed and the person to whom any such cause of action

On appeal to the Commonwealth Court, PHA contended that the trial court erred in denying its Post–Trial Motion because: (1) Pringle failed to timely file a notice of claim within six months from the date of the injury as required by Section 5522(a)(2); (2) no evidence was presented that PHA's negligence caused Ford's lead exposure; (3) the trial court erred in awarding damages for breach of an implied warranty of habitability because contract damages were not the damages that were suffered by Ford, and no implied warranty of habitability cause of action exists in federally funded housing; and (4) the trial court erred in awarding damages because Ford did not prove all of the essential elements for such a cause of action.

The Commonwealth Court denied PHA's appeal. It held, *inter alia,* that PHA was a local agency, not a Commonwealth agency, and therefore the notice requirement of Section 5522(a) did not bar Ford's claim. *See Ford v. Philadelphia Hous. Auth.,* 848 A.2d 1038, 1048–50 (Pa.Cmwlth.2004). PHA then filed an Application for Reargument regarding the issue of whether it is a Commonwealth agency and if Ford's claim was barred by the notice requirement of Section 5522(a). The Commonwealth Court denied reargument.

accrued for any injury to person or property shall be forever barred from proceeding further thereon within this Commonwealth or elsewhere. The court shall excuse failure to comply with this requirement upon a showing of reasonable excuse for failure to file such statement.
(3) In the case of a civil action or proceeding against a government unit other than the Commonwealth government:
(i) The time for giving such written notice does not include the time during which an individual injured is unable, due to incapacitation or disability from the injury, to give notice, not exceeding 90 days of incapacity.
(ii) If the injuries to an individual result in death, the time for giving notice shall commence with such death.
(iii) Failure to comply with this subsection shall not be a bar if the government unit had actual or constructive notice of the incident or condition giving rise to the claim of a person.
42 Pa.C.S. § 5522(a).

### DISCUSSION

On appeal to this Court, PHA presented the following issue: whether a housing authority is a Commonwealth agency for the purposes of sovereign immunity. I believe that it is.

PHA argues that it is immune from the instant suit because, as an "agency of the Commonwealth," the Pennsylvania Sovereign Immunity statute, 1 Pa.C.S. § 2310 ("immunity statute"), applies. The immunity statute states:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

*Id.* PHA may claim sovereign immunity if it is a "commonwealth party." 42 Pa.C.S. § 8501 defines a "commonwealth party" as "[a] commonwealth agency and any employee thereof. . . ." A Commonwealth agency is any executive or independent agency and includes entities such as commissions, authorities, boards, and other agencies of the commonwealth government. 42 Pa.C.S. § 102. The question, therefore, is whether PHA is a Commonwealth agency, as opposed to a local agency, and is therefore included in the definition of "Commonwealth government."

In *Marshall v. Port Auth. of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990), this Court held that the port authority was a Commonwealth agency, and thus entitled to sovereign immunity pursuant to the immunity statute. In making that determination, we focused on the express statutory language that created the port authority, namely the Second Class County Port Authority Act ("PAA"), 55 P.S. § 553. *Marshall*, 568 A.2d at 933. The PAA provides that "[t]here are hereby created bodies corporate and politic in counties of the second class, to be known as Port Authority of (insert name of county), which shall constitute public bodies corporate and politic; **exercising the public powers of the Commonwealth**

as an agency thereof ..." 55 P.S. § 553(a) (emphasis added). We determined that, in light of this plain statutory language, "it would be impossible to conclude that [the Port Authority] is anything other than an agency of the Commonwealth." *Marshall*, 568 A.2d at 934.

The statutory language that created PHA is the same as that which created the port authority; it states that:

[a]n Authority shall constitute a public body, corporate and politic, **exercising public powers of the Commonwealth as an agency thereof,** which powers shall include all powers necessary or appropriate to carry out and effectuate the purpose and provisions of this act, including the following powers, in addition to others herein granted ...

35 P.S. § 1550 (emphasis added). Because this Court has already determined that the language used in the creation of a port authority results in a finding that the authority is a Commonwealth agency, I believe this Court must similarly find that housing authorities are Commonwealth agencies.

Further, the Commonwealth Court decision below relied upon its prior opinion in *Allegheny County Hous. Auth. v. Cooley,* 64 Pa.Cmwlth. 252, 439 A.2d 1315 (1982). There, the Commonwealth Court held that the Allegheny County Housing Authority was a municipal authority rather than an agency of the Commonwealth. *Id.* at 1317. However, the Commonwealth Court in the instant matter failed to acknowledge that its determination in *Cooley* was for the purposes of jurisdiction, not sovereign immunity. This Court recently confirmed that an entity can be a part of the Commonwealth government for one purpose, while concurrently being a local government unit for another. *See Gory Mechanical Contracting, Inc. v. Philadelphia Hous. Auth.,* 579 Pa. 26, 855 A.2d 669, 677–78 (2004).[4] Thus, *Cooley* does not preclude the conclusion that

4. Although I acknowledge that the current state of the law permits a government unit to have multiple characterizations, thus allowing it to be at times a part of the Commonwealth government, and at others merely a part of a municipal government, I once again register my disapproval of such concurrent roles. *See Gory* (Opinion of Eakin, J., Dissenting, joined by Newman J.).

PHA is a Commonwealth agency for the purpose of sovereign immunity.

## CONCLUSION

It is apparent to me that the question presented by PHA is one that this Court should address. It is an issue of first impression. Further, the Commonwealth Courts decision conflicts with previous decisions of that court and with decisions of the Superior Court. It is equally clear that where we have found that the words "exercising the public powers of the Commonwealth as an agency thereof" signify that the government entity in question is a part of the Commonwealth government, we are bound by that reasoning. Thus, I believe the obvious conclusion in the instant matter is that PHA is a Commonwealth agency and benefits from the immunity afforded to all such components of the Commonwealth government pursuant to 1 Pa.C.S. § 2310.[5]

Justice CASTILLE and EAKIN join this dissenting statement.

---

5. Whether PHA would ultimately receive immunity from the instant suit by Ford depends on an analysis of whether it falls into one of eight categories that the legislature removed from the general immunity statute. *See* 42 Pa.C.S. § 8522. However, such analysis is beyond the narrow scope of this Statement, which is to address whether housing authorities are Commonwealth agencies, and, therefore, is not reached.