**CITY OF PHILADELPHIA, Plaintiff**

v.

**PHILADELPHIA PARKING AUTHORITY, Defendant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided Dec. 15, 2003.

Reargument en banc Denied Jan. 14, 2004.

**1268** 

Donald C. Marino, Philadelphia, for plaintiff.

Alfred W. Putnum, Jr., Philadelphia, for defendant.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are preliminary objections filed by the Philadelphia Parking Authority (PPA) in response to a complaint filed by the City of Philadelphia (City) in which the City seeks both monetary damages and specific performance for alleged breaches of two contracts entered into by

the two parties: the Agreement of Cooperation, under which PPA enforces on-street parking; and the Parking Services Contract, under which PPA collects parking fees on behalf of the City at the City-owned Philadelphia International Airport (Airport).

PPA was created as the City's local parking authority in 1950 when the City enacted an ordinance that authorized the Mayor to apply for articles of incorporation for a parking authority pursuant to the Parking Authority Law.[1] Initially, PPA was only involved in off-street parking functions, such as parking garages; however, in 1982, the City and PPA entered into the Agreement of Cooperation where PPA began administering the City's on-street parking functions. As the City's local parking authority, PPA's major functions included the installation and maintenance of parking meters; promulgation of on-street parking regulations; installation of signage; issuance of parking permits; collection of parking meter receipts and fines; issuance of parking tickets; and the towing of illegally parked vehicles. PPA also administered parking at the Airport pursuant to the Parking Services Contract between PPA and the City. There is no dispute that once those agreements expire, the functions performed under the contracts will revert to the City. Yet, it is the rights under those two agreements and how those rights are affected by recent changes to the Parking Authority Law that are at the center of this case.

In June 2001, a new parking authority law commonly referred to as Act 22[2] was enacted. As well as codifying the Parking Authority Law, it made dramatic changes

1. Act of June 5, 1947, P.L. 458, *formerly* 53 P.S. §§ 341–356, *repealed by* Act of June 19, 2001, P.L. 287, No. 22, § 3. In the Parking Authority Law, the General Assembly authorized certain political subdivisions in Pennsylvania to create local parking authorities. The

Parking Authority Law also authorized parking authorities to issue bonds that were excluded from the City's debt limits.

2. 53 Pa.C.S. §§ 5501–5517. *See* ftnt. one.

to the substance of the law in regard to Cities of the First—Class Philadelphia, such as redirecting PPA's net revenues from the City's General Fund and Division of Aviation to the Philadelphia School District, and providing that the Governor of Pennsylvania rather than the Mayor of the City would appoint the members of the PPA Board.[3] As a result of these changes, the City filed a complaint in the Court of Common Pleas of Philadelphia County (Common Pleas Court) challenging the statute on June 29, 2001 (PPA I Action).[4] In that case, the City alleged that Act 22 was an unconstitutional "takeover" of the PPA by the Commonwealth. PPA filed preliminary objections in that case which this Court granted. We dismissed the PPA I Action in its entirety because we ruled that PPA was created in the first instance by virtue of legislation duly enacted by the Commonwealth and, as such, the Commonwealth was entitled to modify and restructure that which it had created. The City appealed that decision and the PPA I Action is now pending in the Supreme Court.[5]

Unlike the previous actions that dealt with the authority of the General Assem-

---

3. The 2001 amendments changed the Parking Authority Law as follows. Section 5508.1(e) of Act 22 provides:

   (e) **Appointment.**—
   (1) The Governor shall appoint six additional members of the board.
   (2) Gubernatorial appointments shall be made as follows: two upon the Governor's own discretion, two from a list of at least three nominees prepared and submitted to the Governor by the President pro tempore of the Senate and two from a list of at least three nominees prepared and submitted to the Governor by the Speaker of the House of Representatives.
   (3) The Governor shall select members from the lists provided....
   (4) In the event that the Governor fails to select a member from an original list of nominees within 30 days of the receipt of the list ... the legislature presiding officer who prepared the list may appoint members to serve on the board.
   53 Pa.C.S. § 5508.1(e)(1)–(4).
   Section 5508.1(q) of Act 22 provides:
   (q) **Funding.**—
   During its fiscal year beginning in 2001, the authority shall transfer to the general fund of a school district of the first class coterminous with the parent municipality that portion of its retained earnings, not to exceed $45,000,000, which will not jeopardize the authority's ability to meet debt service payments or to retire outstanding bonds. In subsequent years the board shall transfer the maximum amount it deems available for such purpose.
   53 Pa.C.S. § 5508.1(q).

4. See *City of Philadelphia v. Schweiker,* 817 A.2d 1217 (Pa.Cmwlth.2003).

5. In November 2002, the General Assembly passed Senate Bill 1100, which became Act 230, Act of December 30, 2002, P.L. _____, which contained provisions related to the operation and control of the Pennsylvania Convention Center as well as numerous further amendments to Act 22. These amendments eliminated the City's remaining powers of supervision over, *inter alia,* PPA's budget, contracting, auditing and expenditures, as well as the manner in which PPA invests its revenues. They also transferred authority over taxis and limousines in Philadelphia from the Public Utility Commission to PPA and granted new powers to PPA to develop mixed-use projects combining public parking facilities with commercial, residential, industrial and retail components. *See* 53 Pa.C.S. § 5508.1(*o*)(1), (2); § 5510.1. As a result of these changes, the City and its Mayor, John F. Street, filed a second petition for review and a motion for preliminary injunction in this Court's original jurisdiction seeking to have Act 230 declared null and void because of certain constitutional infirmities relating to the manner in which it was enacted. (PPA II Action). We granted the City's motion for preliminary injunction, but our Supreme Court granted PPA's application for a supersedeas. Very recently, however, in *City of Philadelphia and Mayor Street v. Commonwealth of PA, et al.* (Nos. 5–9 EAP 2003, 2003 WL 22532525, filed Nov. 7, 2003), our Supreme Court affirmed the grant of the preliminary objection and, after assuming plenary jurisdiction, found that Act 230 was unconstitutionally enacted.

bly to enact this legislation, this present action only involves whether PPA has breached its contract with the City. It began when the City filed a five-count complaint in equity in the Common Pleas Court contending that PPA breached the Agreement of Cooperation and the Parking Services Contract under which PPA manages the City-owned parking facilities at the Airport and enforces on-street parking regulations on the City's behalf. Counts I–III relate to the alleged breach of the Agreement of Cooperation pertaining to on-street parking in the City, and Counts IV–V relate to the alleged breach of the Parking Services Contract pertaining to parking at the Airport. The complaint alleges that PPA has breached (and remains in breach of) its contractual obligation to remit all of its net revenues to the City's General Fund and Division of Aviation and requests that PPA be ordered to pay damages to the City's General Fund and Division of Aviation.[6] PPA then filed preliminary objections to the complaint alleging, among other things, that the Common Pleas Court did not have jurisdiction because PPA was part of "commonwealth government," and not a "local agency," and only this court had jurisdiction. Agreeing and citing to *City of Philadelphia v. Philadelphia Parking Authority*, 568 Pa. 430, 798 A.2d 161 (2002), the Common Pleas Court held that it lacked jurisdiction because PPA is an "agent of the Commonwealth" and because exclusive jurisdiction is vested in this Court and transferred the complaint to us.

PPA then filed preliminary objections in this Court to the transferred complaint alleging that:

- This Court lacks jurisdiction because jurisdiction is vested in the Board of Claims;[7]
- The breach of fiduciary claims contained in Counts I and IV must be dismissed because the complaint does not allege any facts that would support a finding of an agency relationship between the two parties.
- The unjust enrichment claim contained in Count III must be dismissed because such a claim cannot be maintained where you have, as here, a contract.
- Count V should be dismissed because the damages that the City alleges are speculative.
- This action should be stayed under the *lis pendens* doctrine because PPA I is pending before the Supreme Court at this time and the present action is in many respects completely subsumed by the PPA I action.[8]

Contending that *City of Philadelphia* does not stand for the proposition that this matter is not within this court's original jurisdiction, the City asks that this matter

---

**6.** More specifically, Count I alleges breach of fiduciary duties by PPA which the City claims is its "agent" under the Agreement of Cooperation. *See* complaint at paragraphs 15–16. Count II alleges breach of the Agreement of Cooperation regarding on-street parking services. *Id.* at 21. Count III alleges unjust enrichment as a result of PPA's alleged failure to honor the Agreement of Cooperation. *Id.* at 24–25. Count IV alleges breach of fiduciary duties that the PPA supposedly owes by virtue of the Parking Services Contract. Finally, Count V alleges breach of the Parking Services Contract.

**7.** Because some of the relief the City asks for is equitable in nature, PPA phrases its preliminary objection differently claiming that the City had an adequate remedy at law before the Board of Claims.

**8.** PPA also argued in its brief that this action must be stayed under the *lis pendens* doctrine because PPA II was pending before the Supreme Court. However, as noted, the Supreme Court has recently handed down a decision regarding PPA II, making *lis pendens* as to that case inapplicable, if it ever was.

be remanded to Common Pleas Court. Because a determination as to whether we have jurisdiction is crucial, we will decide that issue first.

The original jurisdiction of this court is set forth in Section 761 of the Judicial Code, 42 Pa.C.S. § 761, which provides, in pertinent part, as follows:

(a) **General Rule**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

(i) actions or proceedings in the nature of applications for a writ of habeas corpus or postconviction relief not ancillary to proceedings within the appellate jurisdiction of the court;

(ii) eminent domain proceedings;

(iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);

(iv) actions or proceedings conducted pursuant to the act of May 20, 1987 (P.L. 728, No. 193), referred to as the Board of Claims Act; and

(v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

Pursuant to Section 102 of the Judicial Code, the "Commonwealth government" is defined as follows:

The government of the Commonwealth, including the courts and other officers or agencies of the unified judicial system, the General Assembly and its officers and agencies, the Governor, and the de-partments, boards, commissions, authorities and officers and agencies of the Commonwealth, but the term does not include any political subdivision, municipal or other local authority, or any officer or agency of any such political subdivision or local authority.

42 Pa.C.S. § 102; *State Public School Building Authority v. Hazleton Area School District*, 671 A.2d 272, 274 (Pa. Cmwlth.1996).

The definition of "local authority" in the Statutory Construction Act of 1972 [9] applies to the term as it is used in the Judicial Code, 42 Pa.C.S. § 102:

Although the Judicial Code does not define "local authority," the Statutory Construction Act does. It provides that the phrase "local authority," [w]hen used in any statute finally enacted on or after January 1, 1975, means "a municipal authority or any other body corporate and politic **created by one or more political subdivisions pursuant to statute**." 1 Pa.C.S. § 1991. Both the Judicial Code and the Tort Claims Act were enacted after January 1, 1975; hence, both are subject to this overarching definition.

*Sphere Drake Insurance v. Philadelphia Gas Works*, 566 Pa. 541, 546, 782 A.2d 510, 513 (2001) (citation omitted, emphasis added). The question then is whether PPA falls within the definition of "commonwealth government" or whether it is a "local agency" for purposes of jurisdiction.[10]

In *City of Philadelphia*, our Supreme Court found that this court had original jurisdiction over a matter involving PPA, but the basis of its decision was unclear

9. 1 Pa.C.S. § 1991.

10. *SEPTA v. Union Switch & Signal*, 161 Pa. Cmwlth. 400, 637 A.2d 662, 666, *petition for*

*allowance of appeal denied*, 538 Pa. 662, 648 A.2d 792 (1994), provides an explanation as to why the classification of authorities has caused difficulty.

because, while a number of justices issued concurring and dissenting statements, the Court only issued a *per curiam* order without a published opinion. While three of the justices would have held that PPA was no longer a "local agency" but "part of the commonwealth government" as a result of the recent changes to the Parking Authority Law, two of those justices would have also held that we had original jurisdiction because the Governor was an indispensable party. Then–Chief Justice Zappala wrote a dissenting statement expressing the view that the *per curiam* majority remanded the matter to this Court because it had concluded that the Governor was an indispensable party, not because PPA was part of the "commonwealth government." [11]

In this case, however, no one contends that the Governor is an indispensable par-

ty, and we are again faced squarely with the issue of whether PPA is a part of the "commonwealth government." In *E–Z Parks, Inc. v. Larson*, 91 Pa.Cmwlth. 600, 498 A.2d 1364 (1985), *affirmed*, 509 Pa. 496, 503 A.2d 931 (1986), we specifically held that PPA was a "local agency" for purposes of jurisdiction. The question remains whether that holding continues to be valid because of recent changes made to the Parking Authority Law that gives the Governor rather than the Mayor of the City of Philadelphia the power to make appointments.

As noted, a "local agency" is defined as "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." 1 Pa.C.S. § 1991. As can be seen, what makes an authority a "local agency" is not who appoints the board

---

**11.** This comment seems to have been confirmed in *City of Philadelphia and Mayor Street v. Commonwealth of PA, et al* (Nos. 5–9 EAP 2003, 2003 WL 22532525, filed Nov. 7, 2003), an opinion authored by Justice Saylor, who filed a concurring statement in the PPA I Action based solely on the basis that PPA was now part of the "commonwealth government." In footnote 15, Justice Saylor stated:

This Court recently entered a per curiam order in *City of Phila. v. Philadelphia Parking Auth.*, 568 Pa. 430, 798 A.2d 161 (2002), a dispute in which the City challenged the validity of a statute granting the Governor of Pennsylvania authority to appoint a majority of the Philadelphia Parking Authority's board members. While the order in question directed the Commonwealth Court to resolve the underlying constitutional challenge on the merits, *see id.* at 431, 798 A.2d at 162, several Justices of this Court filed accompanying statements addressing, *inter alia*, whether the Governor was an indispensable party to the litigation. All referred to the CRY/Kline standard, but with varying results. Mr. Justice Castille, joined by Mr. Justice Nigro, opined that the Governor was indeed a necessary party, in part because his appointment powers under the challenged legislation

were the *"sine qua non"* of the dispute. *See id.* at 434, 798 A.2d at 164 (Castille, J., concurring). This author, by contrast, suggested that the Governor was not indispensable to the litigation because, once he had exercised his appointment powers, he maintained no further direct role in the implementation of the statute, thus rendering his interests insufficiently immediate and direct. *See id.* at 447–48, 798 A.2d at 172 (Saylor, J., concurring). Chief Justice Zappala, joined by then-Justice Cappy, now Chief Justice, stated that the Governor's appointive powers were not essential to a disposition of the substantive issues on the merits, and indicated that the "sheer number of gubernatorial appointments" made pursuant to Pennsylvania statutes and administrative regulations would render troublesome any holding that the Governor was indispensable. *See id.* at 467–68, 798 A.2d at 184 (Zappala, C.J., dissenting). In the present case, the Governor was made a party, and thus, we need not decide whether his participation is affirmatively required. Moreover, as none of the persons that Respondents claim are indispensable are Commonwealth parties, the disagreement reflected in *Philadelphia Parking Auth.* is not implicated here.

members, but who creates the authority. Despite the fact that Act 22 changed who appoints board members to PPA, that Act does not change the fact that it was the City who created PPA or that in cities of the first class—Philadelphia—both then and now, only the city can create a parking authority. Section 5504(1) of Act 22, which embodies the changes by Act 22, now provides that a parking authority is created "[i]f a legislative body desires to organize an authority under this chapter, it shall adopt a resolution or ordinance signifying intention to do so." 53 Pa.C.S. § 5504(1). "Legislative body" is defined as "[t]he council of a city or borough and the board of commissioners of a first class township." 53 Pa.C.S. § 5503. So then, because PPA was created by the City, it is, by definition, a "local authority."

Because PPA is a "local authority" and not part of the "commonwealth government," and *E–Z Parks* remains controlling, necessarily, this action does not fall within our original jurisdiction as set forth in 42 Pa.C.S. § 761 and this matter is remanded to the Common Pleas Court.

### ORDER

AND NOW, this 15th day of December, 2003, this matter is remanded to the Common Pleas Court.

Jurisdiction relinquished.