**PHILADELPHIA PARKING AUTHORITY, Petitioner,**

v.

**AMERICAN FEDERATION OF STATE, COUNTY, MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 33, LOCAL 1637, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 2, 2004.
Decided March 24, 2004.

Martin R. Lentz, Philadelphia, for petitioner.

Nancy B.G. Lassen, Philadelphia, for respondent.

BEFORE: PELLEGRINI, J., SIMPSON, J., and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Philadelphia Parking Authority (PPA) appeals an Arbitration Award sustaining the grievance filed by American Federation of State, County, Municipal Employees, District Council 33, Local 1637 (Union).

PPA provides a system of parking and parking enforcement within the City of Philadelphia (City) and is a "public employer" under the Public Employe Relations Act.[1] The Union is the bargaining agent for employees of the PPA. These parties are involved in two collective bargaining agreements (CBA), involving two separate bargaining units. The first is the "DC 33 Contract," which covers "tow truck operators" and excludes "supervisors, professionals, and confidential employees." The second is the "DC 47 Contract," which covers only first level supervisors including "tow operator supervisor" and "impoundment lot supervisor." The latter contract places no restriction on who PPA can hire as a supervisor.

The present dispute originated when the City passed a program called the "Live Stop" program, which involves the immediate towing and impoundment of vehicles found to be operating in violation of certain state motor vehicle statutes. As a result of Live Stop, PPA had to hire or promote more tow operators, tow supervisors, and impoundment lot supervisors by Summer 2002. To aid in that process, PPA announced it would hire or promote employees to the new positions based on final scores calculated on the following percentages: 40% test, 10% supervisor's recommendation, 10% attendance, and 40% oral interview. Before being considered for an oral interview, however, prospects needed a total score of 36 points based on their test score, recommendation, and attendance record.

The Union filed a grievance, alleging that PPA violated the provisions in the DC 33 Contract governing postings for new jobs and challenging the "process" used for promoting both types of supervisors under the provisions prohibiting discrimination in the selection process. Because these disputes were not resolved through the pre-arbitration grievance procedure in the DC 33 Contract, the Union filed a Demand for Arbitration.

For the first time before the arbitrator, the Union specifically alleged that PPA improperly considered the attendance record (including sick leave and emergency or vacation leave) of applicants for vacancies in the tow operator, tow supervisor, and impoundment lot supervisor positions. As a result, it alleged that DC 33 employees who used a large number of sick/vacation days were at a disadvantage as compared to newer employees who had little or no sick/vacation days to use. PPA countered by raising the issue of arbitrability in two respects: (1) the Union lacked standing to grieve on behalf of the supervisor-level employees covered under the DC 47 Contract, and (2) the Arbitrator lacked jurisdiction to decide the issue of poor attendance because the Union failed to raise that issue at each step of the grievance procedure before reaching the arbitration level.

Regarding the issue of arbitrability, the Arbitrator reasoned that the Union's grievance challenged the "process" used in making promotions, and that the attendance issue was fairly encompassed by the amendment. As to the merits, the Arbitrator found that although she lacked authority to determine whether PPA violated the DC 47 Contract (relating to supervisors), the Arbitrator had the authori-

---

1. Act of July 23, 1970, P.L. 563, as amended,   43 P.S. §§ 1101.101—1101.2301.

ty to determine whether PPA violated the DC 33 Contract by treating those employees differently under that agreement in violation of the leave and management-rights provisions. The Arbitrator then fashioned an award requiring the parties to develop an appropriate, individualized remedy and retained jurisdiction in the event that the parties could not agree on the appropriate relief in light of the breach of contract. PPA appeals.[2]

■ Though neither party raised the issue, we must first determine whether we have jurisdiction over this appeal. *Spirit of the Avenger Ministries v. Commonwealth*, 767 A.2d 1130 (Pa.Cmwlth.2001) (Commonwealth Court has the obligation to *sua sponte* raise the issue of its jurisdiction). Under Section 763(b) of the Judicial Code, 42 Pa.C.S. § 763(b), this Court has jurisdiction over appeals from awards of arbitrators as follows:

(b) **Awards of arbitrators.**—The Commonwealth Court shall have exclusive jurisdiction of all petitions for review of an award of arbitrators appointed in conformity with statute to arbitrate a *dispute between the Commonwealth and an employee of the Commonwealth.* The petition for review shall be deemed an appeal from a government unit for the purposes of section 723 (relating to appeals from Commonwealth Court) and Chapter 55 (relating to limitation of time).

42 Pa.C.S. § 763(b) (emphasis added). However, Section 763(c) provides the following exception to this rule:

(c) **Exceptions.**—The Commonwealth Court shall not have jurisdiction of such classes of appeals from government agencies as are:

\* \* \*

(2) By section 933 (relating to appeals from government agencies) within the exclusive jurisdiction of the courts of common pleas.

42 Pa.C.S. § 763(c)(2).

Section 933(b) gives the courts of common pleas the following jurisdiction in arbitration cases that do not involve agencies of the Commonwealth of Pennsylvania:

(b) **Awards of arbitrators.**—Except as otherwise prescribed by any general rule adopted pursuant to section 503, each court of common pleas shall have jurisdiction of petitions for review of an award of arbitrators appointed in conformity with statute to arbitrate a *dispute between a government agency, except a Commonwealth agency,* and an employee of such agency. The application shall be deemed an appeal from a government agency for the purposes of section 762(4) (relating to appeals from courts of common pleas) and Chapter 55 (relating to limitation of time).

42 Pa.C.S. § 933(b) (emphasis added).

Under Section 102 of the Judicial Code, 42 Pa.C.S. § 102, a "government agency" is: (1) a commonwealth agency, or (2) a political subdivision, municipality, or other local authority and the officers thereof. A commonwealth agency is defined as "[a]n executive agency or independent agency." *Id.* Agencies are classified as "executive" if they are under the supervision and con-

---

**2.** We review labor arbitration awards under the two-prong "essence test:" First, we determine if the issue is encompassed within the terms of the collective bargaining agreement; if so, we then determine whether the arbitrator's interpretation of the collective bargaining agreement can in any way be "rationally derived" from that agreement. *Danville Area School District v. Danville Area Education Association*, 562 Pa. 238, 754 A.2d 1255 (2000); *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999).

trol of the Governor and, if they are not, as "independent." *Id.* Both types of agencies are expressly defined as including entities such as boards, commissions, authorities and other agencies "of the Commonwealth government." *Id.* "Commonwealth government," in turn, is defined as encompassing "the departments, boards, commissions, authorities and officers and agencies of the commonwealth, but the term does not include any political subdivision, municipal or other local authority, or any officer or agency of any such political subdivision or *local authority.*" *Id.* (emphasis added). *See also State Public School Building Authority v. Hazleton Area School District,* 671 A.2d 272 (Pa. Cmwlth.1996). A "local authority," is defined in Section 1991 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1991, as "a municipal authority or other body corporate and politic *created by one or more political subdivisions pursuant to statute.*" 1 Pa. C.S. § 1991 (emphasis added).

As is apparent from the foregoing definitions, whether we have jurisdiction depends upon whether PPA is part of the "commonwealth government" or is a "local authority," an issue that we recently resolved in *City of Philadelphia v. Philadelphia Parking Authority,* 837 A.2d 1267 (Pa.Cmwlth.2003). In that case, the City brought an action in the court of common pleas against PPA seeking monetary damages and alleging breach of contract. The court of common pleas transferred the matter to this Court, reasoning that we had original jurisdiction[3] over the dispute because PPA was part of the "commonwealth government" in light of recent amendments, commonly known as Act 22,[4] to the Parking Authority Law.[5] We explained that although that Act amended the Parking Authority Law to give the Governor the power to appoint board members of local parking authorities, nevertheless, PPA was not part of the "commonwealth government" because Act 22 merely changed the manner of appointing board members; it did not change how the authority was *created.* Because local legislative bodies create parking authorities,[6] we held that PPA was, by definition, a "local authority." *See also E–Z Parks, Inc. v. Larson,* 91 Pa.Cmwlth. 600, 498 A.2d 1364 (1985), *affirmed,* 509 Pa. 496, 503 A.2d 931 (1986).

Because PPA is not part of the commonwealth government and is not a commonwealth agency, initial appeals from arbitration awards must be filed in the court of common pleas. Accordingly, pursuant to Section 5103 of the Judicial Code,[7] we will

---

3. The original jurisdiction of this court is set forth in Section 761 of the Judicial Code, which provides, in pertinent part, as follows:

   (a) **General Rule**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

   (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity[.]

   42 Pa.C.S. § 761(a)(1).

4. 53 Pa.C.S. §§ 5501–5517.

5. Act of June 5, 1947, P.L. 458, *formerly* 53 P.S. §§ 341–356, *repealed by* Act of June 19, 2001, P.L. 287, No. 22, § 3 (Act 22).

6. Section 5504(1) of Act 22 provides that a parking authority is created as follows: "[i]f a legislative body desires to organize an authority under this chapter, it shall adopt a resolution or ordinance signifying intention to do so." 53 Pa.C.S. § 5504(1). "Legislative body" is defined as "[t]he council of a city or borough and the board of commissioners of a first class township." 53 Pa.C.S. § 5503.

7. Section 5103(a) provides as follows:

   (a) **General rule.**—If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or district justice shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this

transfer this case to the Court of Common Pleas of the First Judicial District for disposition.

## ORDER

AND NOW, this *24th* day of *March,* 2004, the above-captioned matter is transferred to the Court of Common Pleas of the First Judicial District.

Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth. A matter which is within the exclusive jurisdiction of a court or district justice of this Commonwealth but which is commenced in any other tribunal of this Commonwealth shall be transferred by the other tribunal to the proper court or magisterial district of this Commonwealth where it shall be treated as if originally filed in the transferee court or magisterial district of this Commonwealth on the date when first filed in the other tribunal.
42 Pa.C.S. § 5103(a).