**BANACOL MARKETING CORPORATION,**
Appellant

v.

**PENN WAREHOUSING & DISTRIBUTION, INC. and Philadelphia Regional Port Authority.**

Commonwealth Court of Pennsylvania.

Argued June 7, 2006.

Decided Aug. 11, 2006.

James P. Golden, Philadelphia, for appellant.

Michael S. Hino, Berwyn, for appellee, Penn Warehousing & Distribution, Inc.

Francis X. Crowley, Philadelphia, for appellee, Philadelphia Regional Port Authority.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

We consider the appeal of Banacol Marketing Corporation (Banacol) from the orders of the Court of Common Pleas of Philadelphia County (trial court) that sustained the preliminary objections of Penn Warehousing & Distribution (PWD) and the Philadelphia Regional Port Authority (PRPA) to Banacol's complaint alleging breach of contract, dangerous condition of real property, and misrepresentation, and which overruled PRPA's preliminary objection to jurisdiction. We affirm the trial court's order sustaining PWD's preliminary objections and we affirm the trial court's order regarding PRPA's preliminary objections to the extent that the trial court determines that Banacol has stated no cause of action against PRPA, while reversing the trial court's order regarding PRPA to the extent that it determines that it has jurisdiction over PRPA, an apparent contradiction that we will explain below.

In May of 2001, Banacol entered into a 10–year stevedoring and warehousing agreement with Horizon Stevedoring (Horizon), an affiliate of PWD, under which Horizon would unload bananas for Banacol at Municipal Pier 82 (Pier 82). PWD leased Pier 82 from PRPA. Banacol unilaterally terminated the agreement before the end of its term when it began shipping bananas in containers rather than in bulk, a system that requires substantially fewer longshoremen than bulk shipments. While the dispute over this termination was being arbitrated,[1] and after Banacol had

---

1. According to Banacol, it has paid an American Arbitration Association award of $1,168,000.00 to Horizon.

ceased operations on Pier 82, Banacol became aware of the report of an inspection of PRPA's piers that revealed that Pier 82, as well as other piers, was in a deteriorated condition and needed significant repair. The report had been commissioned by PRPA as a precautionary measure in the wake of the catastrophic collapse of Pier 34 [2] in 2000 that resulted in the deaths of three people. On the basis of that report, Banacol filed suit against PWD and PRPA on the theory that those entities were responsible for Banacol's contract damages because Banacol would not have entered into the agreement in the first place if PWD and PRPA had disclosed the deteriorated condition of Pier 82. As we examine the complaint we must remember that this matter had its genesis in Banacol's decision to import bananas in containers rather than in bulk, a decision that caused it to abandon operations at Pier 82 and to terminate its agreement with Horizon because Pier 82 was not capable of handling containerized shipping. The complaint does not allege that Banacol suffered any actual damage from the condition of Pier 82. The only damages plead are the liquidated damages for which it was found liable for breaching its agreement with Horizon.

It was only after Banacol had moved its operations from Pier 82 that it became aware of the report, and it was at this point that Banacol brought suit in the trial court against PRPA for: 1) breach of contract on the theory that Banacol was an intended beneficiary of the lease between PRPA and PWD; 2) breach of contract for failure to disclose the condition of Pier 82;

and 3) breach of a duty of care to Banacol in allowing Banacol to occupy property that was in a dangerous condition. Banacol brought suit against PWD for: 1) breach of contract in allowing Banacol to occupy a property that was in unsound condition; 2) negligent misrepresentation for failing to notify Banacol of the condition of Pier 82; and 3) innocent misrepresentation [3] which appears to be a restatement of the misdeeds related in Count IV that were done innocently rather than negligently. The damages that Banacol demands in the *ad damnum* clause of each count in its complaint are "[a]ny liquidated damages or termination fee in the Arbitration ... and other damages recoverable under law...." [4]

PWD and PRPA filed preliminary objections to the complaint that were sustained by the trial court, which found, in the case of PRPA, that "despite its creative drafting [Banacol's] claims against PRPA are nothing more than a claim for indemnification against a party with whom it has no direct relationship" (Trial court opinion re PRPA, p. 2) and that "[Banacol's] claims against PWD must fail for essentially the same reasons that this court found its claims against PRPA failed: [Banacol] has not demonstrated a causal link between PWD's alleged conduct and its 'injury,' nor has it pled the existence of actual damages." (Trial court opinion re PWD, p. 1). Banacol brought this appeal.

■ The questions we are asked to determine are: 1) whether the trial court erred: 1) in sustaining PWD and PRPA's objections; 2) in finding that Banacol was

---

**2.** Pier 34 was being used by its tenant as a restaurant/night club and not for any longshore or stevedoring operations.

**3.** An allegation of "innocent misrepresentation" begs the question of whether one can be

found liable for something alleged to have been done innocently.

**4.** The complaint was filed before the arbitration award was made.

not an intended beneficiary of the lease between PWD and the PRPA; 3) in finding that Banacol had suffered no actual damages as a result of any acts or omissions by PWD and PRPA; and 4) in finding that no cause of action existed based upon a dangerous condition of real estate.[5]

 In ruling on preliminary objections, a court must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced from them. *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995).

PRPA objected preliminarily to Banacol's complaint on the grounds that the trial court lacked jurisdiction because PRPA is a commonwealth agency and that jurisdiction lay with the Board of Claims. Both PRPA and PWD objected on the grounds that the complaint failed to state a claim upon which relief could be granted. The trial court overruled PRPA's objection of a lack of jurisdiction but sustained its other objections as well as PWD's objections.

The trial court relied on our decision in *National Construction Services, Inc. v. Philadelphia Regional Port Authority,* 789 A.2d 306 (Pa.Cmwlth.2001), in determining that PRPA was not a Commonwealth agency. Our decision in *National Construction,* however, makes no determination as to whether PRPA is a Commonwealth agency; what we say there is, at best, dicta, a mere passing reference. Our Supreme Court established the criteria by which we determine whether an entity is a Commonwealth agency in *James J. Gory Mechanical Contracting, Inc. v. Philadelphia Housing Authority,* 579 Pa. 26, 855 A.2d 669 (2004). In *Gory* our Supreme Court said,

> [W]hen determining whether an entity is a Commonwealth agency for jurisdictional purposes so that cases against it must be originally heard in the Commonwealth Court, the pivotal factors to be looked at are whether the entity operates on a statewide basis and is predominantly controlled by the state. As we explained in T R Painting Co.,[6] where the entity acts throughout the state and under the state's control, it is clearly meant to be a Commonwealth agency for jurisdictional purposes so that it may be sued in the Commonwealth Court. In contrast, where the entity operates within a single county or municipality and is governed in large part by that county or municipality, the entity must be characterized as a local agency and sued in the trial courts because the trial courts will be more familiar with the issues surrounding the entity's operations and organizational makeup.

579 Pa. 26, 855 A.2d at 678

 PRPA was created by the General Assembly for a statewide mission and it is controlled by elected officials of the Commonwealth, Section 4 of the Philadelphia Regional Port Authority Act, 55 P.S. § 697.4.[7] The legislative findings that are part of the act creating the PRPA clearly establish its statewide mission[8] and its control by elected officials of the Commonwealth is total, as its 11–member board is

---

5. In reviewing a decision of a lower court on preliminary objections we consider a pure question of law and our standard of review is plenary. *Hospital Healthsystem Association of Pennsylvania v. Department of Public Welfare,* 585 Pa. 106, 888 A.2d 601 (2005).

6. *T R Painting Co., Inc. v. Philadelphia Housing Authority,* 466 Pa. 493, 353 A.2d 800 (1976).

7. Act of July 10, 1989, P.L. 291, No. 50.

8. The legislative findings read, in pertinent part,

composed of individuals who are appointed by the Governor and the majority and minority leaders of the two houses of our General Assembly and no others. This action should have been brought against PRPA in the Board of Claims pursuant to 62 Pa.C.S. § 1724(a)(3), which provides, in pertinent part,

**1724. Jurisdiction**

**(a) Exclusive jurisdiction.**—The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

. . .

(3) Unless otherwise provided by law, a contract entered into by a Commonwealth agency involving real property interests in which the Commonwealth agency is the respondent.

Banacol's claim that PRPA was liable to it for damages arising from a contract involving real property interests should have been brought before the Board of Claims, and the trial court erred in not sustaining PRPA's preliminary objection on that ground.

The trial court did not err in sustaining PWD's objections, and we find its characterization of Banacol's complaint as "creative drafting" to be charitable in the extreme. Banacol's claims against both PRPA and PWD are creative almost to the point of being frivolous. Even though we have determined that the trial court lacked jurisdiction over PRPA we will discuss its findings in regard to PRPA as well as PWD with the hope that Banacol will be dissuaded from pursuing this matter further.

■ As general rule, a contract action cannot be maintained against a person or

(a) Legislative findings.—It is hereby determined and declared as a matter of legislative finding:
(1) Greater utilization of the Delaware River is necessary for the increased commerce and prosperity of the people of this Commonwealth.
(2) Increased commerce and prosperity of this Commonwealth require a more effective coordination of port facilities and port-related facilities and projects within an established regional port zone along the Delaware River.
(3) The long-term economic health of this Commonwealth requires reliable access to water borne transportation on the Delaware River in conjunction with other forms of transportation.
(4) The expansion of industrial and commercial activities of this Commonwealth require the planning, designing, construction, erection, operation and management of port facilities and port-related facilities and projects within an established regional port zone along the Delaware River.
(5) The ability of regional port facilities along the Delaware River to handle cargo in a reliable, efficient and profitable manner is essential to the long-term economic health and growth of this Commonwealth.
(6) Increased regional port activities along the Delaware River will generate substantial direct and indirect employment and tax revenues for the entire Commonwealth and will stimulate labor-intensive and other support services which are essential to the economic well-being of this Commonwealth.
(7) The establishment of a port authority for governance of regional port activities along the Delaware River will promote economic growth within this Commonwealth and improve public safety, convenience and welfare.
(8) The creation of a port authority for governance of regional port activities along the Delaware River would provide an effective marketing tool for maintaining existing businesses and attracting new businesses while stimulating international trade and promoting industrial development within this Commonwealth.
(9) The creation of a port authority for governance of regional port activities along the Delaware River would provide a single and accountable legal entity for the conduct of regional port and port-related activities and business along the Delaware River and for this Commonwealth.
Section 2 of the Act, 55 P.S. § 697.2.

entity who is not a party to the contract unless the plaintiff is a third-party beneficiary of that contract. *State Public School Building Authority v. Noble C. Quandel Company,* 137 Pa.Cmwlth. 252, 585 A.2d 1136 (1991). Where a plaintiff can establish that a contractual relationship existed there can be no recovery of damages unless the plaintiff can demonstrate a causal connection between a breach of that relationship and the plaintiff's claimed damages. *Exton Drive–In, Inc. v. Home Indemnity Company,* 436 Pa. 480, 261 A.2d 319 (1969), *cert. denied,* 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970).

■ We need go no further than Banacol's claim for damages to demonstrate its complaint's complete failure to state any claim against either PRPA or PWD. It is hornbook law that a plaintiff may not recover damages in any action unless they can demonstrate that a defendant had a duty to them that it breached and that the plaintiff suffered damage as a proximate cause of that breach. In the *ad damnum* clause of each count of its complaint Banacol asks the trial court to award, "[A]ny liquidated damages or termination fee in the Arbitration . . . and other damages recoverable under law. . . ." There are two defects in this demand for damages. The first is that Banacol never demonstrates how PRPA and PWD can possibly be liable to it for a liquidated damage award that it incurred by unilaterally terminating a contract with a third party, and the second is that Banacol never alleges that it suffered any other actual damage as a result of the deteriorated condition of Pier 82. Banacol admits that it was not even aware of the condition of Pier 82 until after it had abandoned the premises. Its sole claim is that *if* it had known it would not have entered into the contract and therefore would not have had to pay the arbitration award for breaching the contract. All

of this ignores the fact that it was Banacol's breach of its contract with Horizon, and not its lack of knowledge of the condition of Pier 82 that was the *proximate cause* of the arbitration award against it, and that award is the only damage that Banacol claims that it has suffered. PRPA leased Pier 82 to PWD. PWD's affiliate, Horizon, provided services to Banacol on Pier 82. There is no allegation in the complaint that the condition of Pier 82 had any effect whatsoever on Horizon's ability to perform those services or that Banacol suffered any damage, economic or otherwise, that was caused by the condition of Pier 82. Banacol unilaterally terminated its agreement with Horizon because it found a less expensive way to import bananas into the Port of Philadelphia. Part of the calculus that drove that decision had to be the possibility of paying liquidated damages to Horizon. Banacol's complaint against PRPA and PWD appears to be no more than a creative attempt by Banacol to mitigate damage it inflicted on itself.

Accordingly, we affirm the trial court's order sustaining PWD's preliminary objections and we affirm the trial court's order regarding PRPA's preliminary objections to the extent that the trial court determines that Banacol has stated no cause of action against PRPA, while reversing the trial court's order regarding PRPA to the extent that it determines that it has jurisdiction over PRPA. We affirm the trial court's order sustaining PRPA's objections to the causes of action stated against it in the interest of judicial economy in spite of our finding that the trial court lacked jurisdiction, because we find that Banacol's complaint is clearly devoid of any allegations that might in any way support a cause of action against PRPA, and since the issue here is solely a question of law over which this Court would have plenary review, a remand for consideration of this

matter by the Board of Claims would be supererogatory.

### ORDER

AND NOW, this 11th day of August 2006, the order of the Court of Common Pleas of Philadelphia County in this matter sustaining the preliminary objections of Penn Warehousing and Distribution is AFFIRMED, and the order of the Court of Common Pleas of Philadelphia County entered in this matter in regard to the Philadelphia Regional Port Authority is REVERSED only to the extent that that Court determines that it has jurisdiction over the Philadelphia Regional Port Authority, and that order is in all other respects AFFIRMED.