**Ronald BLOUNT, Individually and as president of the Taxi Worker's Alliance of Pennsylvania, Arink, Inc., Raink, Inc., Audrey Cab, Inc., t/a County Cab, Sawink, Inc., Dee–Dee Cab, Inc., t/a Penn–Del Cab, Quaker City Cab, Inc., Germantown Cab Co. and Michael Etemad, Petitioners**

v.

**PHILADELPHIA PARKING AUTHORITY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2006.

Decided March 9, 2007.

Michael S. Henry, Philadelphia, for petitioners.

Andrew A. Chirls, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge,[1] COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge LEADBETTER.

Before this court are preliminary objections filed by the Philadelphia Parking Authority (PPA) to the petition for review filed by Ronald Blount, individually and as president of the Taxi Worker's Alliance of Pennsylvania,[2] along with Michael Etemad, a Philadelphia business owner, several other corporations providing taxicab services, and a corporation providing radio dispatch services (hereinafter collectively referred to as Blount) against PPA.[3] Because we

---

1. This case was assigned to the opinion writer prior to the date when Judge Leadbetter assumed the status of President Judge on January 7, 2007.

2. The Taxi Worker's Alliance of Pennsylvania is a non-profit corporation organized by taxicab owners and drivers.

3. The corporate petitioners include: Arink, Inc., Raink, Inc., Audrey Cab, Inc., t/a County Cab, Sawink, Inc., Dee–Dee Cab, Inc., t/a Penn–Del Cab, Quaker City Cab, Inc., and Germantown Cab Co. The action has since been discontinued on behalf of Germantown

once again conclude that PPA is a local agency, as opposed to a Commonwealth agency, we transfer this action to the Court of Common Pleas of Philadelphia County for lack of jurisdiction.

In April of 2006, Blount filed a petition for review against PPA in this court's original jurisdiction. In the petition for review, Blount seeks a declaration that the taxicab and limousine regulations promulgated by PPA in 2005, pursuant to Act 94 of 2004 (Act 94),[4] which effectively transferred the regulation of the Philadelphia taxicab and limousine industry from the Pennsylvania Utility Commission (PUC) to PPA are invalid and unenforceable.[5] Blount contends, *inter alia,* that the regulations were not properly promulgated in accordance with the Commonwealth Documents Law[6] and that PPA failed to apply the General Rules of Administrative Practice and Procedure.[7] Blount also requests injunctive relief, a writ of mandamus, and/or writ of prohibition.

In response, PPA filed preliminary objections to Blount's petition for review.[8] By order dated June 19, 2006, we directed the parties to address the issue of whether PPA is "the Commonwealth for the purposes of our original jurisdiction"

in their briefs on the preliminary objections or in separate briefs. Shortly thereafter, on June 28, Blount filed a Motion for Preliminary Injunction and/or Special Injunction (Motion for Injunction) seeking to enjoin PPA from implementing and enforcing the taxicab and limousine regulations. In that motion, Blount contended that the implementation and enforcement of these regulations would cause immediate and irreparable harm. Following a hearing, the motion was dismissed due to Blount's failure to show irreparable harm.

■ Prior to addressing PPA's preliminary objections, we must first determine whether this court has jurisdiction over the action. The Judicial Code provides that we have original jurisdiction over all civil actions brought against the "Commonwealth government" unless one of several enumerated exceptions applies. *See* 42 Pa. C.S. § 761. The Judicial Code defines the "Commonwealth government" as follows:

> The government of the Commonwealth, including the courts and other officers or agencies of the unified judicial system, the General Assembly and its officers and agencies, the Governor, and the departments, boards, commissions, author-

---

Cab Co. Michael Etemad's interest in the action is not clear.

4. Act of July 16, 2004, P.L. 758.

5. The challenged regulations were promulgated by PPA pursuant to Sections 5722 and 5742 of Chapter 57 of Title 53 of the Pennsylvania Consolidated Statutes, 53 Pa.C.S. §§ 5722, 5742. Act 94 of 2004 (Act 94), the Act of July 16, 2004, P.L. 758, reenacted, amended, and added substantial provisions to Chapters 55 and 57 of Title 53 of the Pennsylvania Consolidated Statutes, 53 Pa.C.S. §§ 5501–5517, 5701–5745. Act 94 effectively transferred the regulatory authority of taxicabs and limousines operating in first class cities from the Pennsylvania Utility Commission (PUC) to PPA.

6. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602.

7. 1 Pa.Code §§ 31.1– § 35.251.

8. In its preliminary objections, PPA argues that: 1) Blount's action is not ripe; 2) declaratory relief is inappropriate because Blount failed to exhaust an available administrative remedy; 3) injunctive relief is inappropriate because there is an adequate remedy at law available; 4) relief in the form of a mandamus and/or a prohibition is inappropriate because Blount failed to exhaust other adequate and appropriate remedies; and 5) Blount's petition for review is deficient under Rule 1513(e) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P 1513, because it does not contain a notice to plead.

ities and officers and agencies of the Commonwealth, but the term does not include any political subdivision, municipal or other local authority, or any officer or agency of any such political subdivision or local authority.

42 Pa.C.S. § 102. Therefore, PPA must be a Commonwealth agency, as opposed to a political subdivision or a municipal or local authority, for this court to have original jurisdiction over this case.

The Judicial Code defines a "Commonwealth agency" as "[a]ny executive agency or independent agency." 42 Pa.C.S. § 102. Furthermore, an "executive agency" is defined as "[t]he Governor and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government, but the term does not include any court or other officer or agency of the unified judicial system, the General Assembly and its officers and agencies, or any independent agency." *Id.* On the other hand, an "independent agency" is defined as:

> Boards, commissions, authorities and other agencies and officers of the Commonwealth government which are not subject to the policy supervision and control of the Governor, but the term does not include any court or other officer or agency of the unified judicial sys-

tem or the General Assembly and its officers and agencies.

*Id.* "Executive agencies differ from independent agencies only insofar as they are subject to the Governor's supervision and control whereas independent agencies are not. Notably, the Judicial Code does not define the terms political subdivision, municipal authority, local authority, or local agency." *James J. Gory Mech. Contracting Inc. v. Philadelphia Housing Auth.,* 579 Pa. 26, 31 n. 7, 855 A.2d 669, 673 n. 7 (2004). The Statutory Construction Act, though, defines a "local authority" as "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." 1 Pa.C.S. § 1991.[9]

This court, on prior occasions, has found PPA to be a local agency or authority and not part of the "Commonwealth government." *See City of Philadelphia v. Philadelphia Parking Auth.,* 837 A.2d 1267 (Pa. Cmwlth.2003); *E–Z Parks, Inc. v. Larson,* 91 Pa.Cmwlth. 600, 498 A.2d 1364 (1985), *affirmed without op.,* 509 Pa. 496, 503 A.2d 931 (1986). *See also Philadelphia Parking Auth. v. Am. Fed'n of State, County, Mun. Employees, Dist. Council 33, Local 1637,* 845 A.2d 245 (Pa.Cmwlth.2004).[10] In *City of Philadelphia,*[11] we addressed whether changes to the Parking Authority Law[12]

---

**9.** The definitions provided by the Statutory Construction Act are applicable because the Judicial Code was enacted after January 1, 1975. *City of Philadelphia v. Philadelphia Parking Auth.,* 837 A.2d 1267, 1271 (Pa. Cmwlth.2003).

**10.** Blount cites to *Ridgeway v. U.S. Life Credit Life Insurance Company,* 793 A.2d 972 (Pa.Super.2002), for the proposition that when an issue is raised for which there is no clear precedent, our role is to resolve the issue as we predict the Pennsylvania Supreme Court would do. Here, however, there is clear precedent, as we have consistently found PPA to be a local agency or authority

for the purpose of jurisdiction. *See City of Philadelphia; E–Z Parks.*

**11.** In that case, PPA filed preliminary objections in response to a complaint filed by the City of Philadelphia in which the City sought monetary damages and specific performance for alleged breaches of contracts governing the enforcement of on-street parking and the collection of parking fees at the Philadelphia International Airport.

**12.** Act of June 5, 1947, P.L. 458, formerly 53 P.S. §§ 341–356, repealed by Section 3 of the Act of June 19, 2001, P.L. 287 (referred to as Act 22), and recodified as amended at 53 Pa.C.S. §§ 5501–5517.

brought about by Act 22 of 2001 (Act 22) [13] changed PPA's status as a local agency. Act 22 recodified the Parking Authority Law and "made dramatic changes to the substance of the law" in regards to Philadelphia. [14] *City of Philadelphia*, 837 A.2d at 1268–69. As we noted in *City of Philadelphia*, such changes included "redirecting PPA's net revenues from the City's General Fund and Division of Aviation to the Philadelphia School District" and transferring the power to appoint members of the PPA Board from the Mayor of Philadelphia to the Governor of Pennsylvania. *Id.* In concluding that these changes did not alter PPA's status as a local agency, we observed:

> As can be seen, what makes an authority a "local agency" is not who appoints the board members, but who creates the authority. Despite the fact that Act 22 changed who appoints board members to PPA, that Act does not change the fact that it was the City who created PPA or that in cities of the first class-Philadelphia-both then and now, only the city can create a parking authority.

*Id.* at 1272–73. Thus, we concluded that "because PPA was created by the City, it is, by definition, a 'local authority.' " *Id.* at 1273. Therefore, we determined that our prior conclusion in *E–Z Parks*, that PPA constituted a local agency remained controlling and that the action did not fall within our original jurisdiction. Consequently, we transferred the matter to common pleas.

 Furthermore, in *Gory*, in determining the status of the Philadelphia Housing Authority (PHA), "[o]ur Supreme Court established the criteria by which we determine whether an entity is a commonwealth agency." *Banacol Mktg. Corp. v.* *Penn Warehousing & Distrib., Inc.*, 904 A.2d 1043, 1046 (Pa.Cmwlth.2006). In *Gory*, our Supreme Court articulated the following standard:

> [W]hen determining whether an entity is a Commonwealth agency for jurisdictional purposes so that cases against it must be originally heard in the Commonwealth Court, *the pivotal factors to be looked at are whether the entity operates on a statewide basis and is predominantly controlled by the state.* As we explained in [*T & R Painting Co., Inc. v. Philadelphia Housing Authority*, 466 Pa. 493, 353 A.2d 800 (1976),] where the entity acts throughout the state and under the state's control, it is clearly meant to be a Commonwealth agency for jurisdictional purposes so that it may be sued in the Commonwealth Court. In contrast, where the entity operates within a single county or municipality and is governed in large part by that county or municipality, the entity must be characterized as a local agency and sued in the trial courts because the trial courts will be more familiar with the issues surrounding the entity's operations and organizational make-up.

*Gory*, 579 Pa. at 40, 855 A.2d at 678 (emphasis added). " 'The concept of jurisdiction is designed to insure the availability of the most practical and competent forum for the airing of a particular grievance.' " *Id.* at 39, 855 A.2d at 678 [quoting *Scott v. Shapiro*, 19 Pa.Cmwlth. 479, 339 A.2d 597, 599 (1975) ]. The *Gory* court observed that "the Commonwealth Court was created to serve as an original forum for deciding issues of statewide concern that needed to be uniformly decided." *Id.* In determining PHA's status, the court noted that the governing body of the city or county in which a housing

<hr>

13. Act of June 19, 2001, P.L. 287. *See* footnote 11, *supra*.

14. Philadelphia is the only city in Pennsylvania that qualifies as a city of the first class.

authority is located has the power to create or dissolve the housing authority, as well as to appoint the authority's members housing authorities, and that housing authorities "operate solely in one locality and predominantly under the control of the governing body in that locality." *Id.* at 36 & n. 13, 855 A.2d at 675–76 & n. 13. Therefore, the court concluded that housing authorities are considered local agencies for purposes of jurisdiction and subject to the original jurisdiction of common pleas. *Id.* at 36, 855 A.2d at 676.

Because these cases were decided before passage of Act 94, we must determine whether its impact on PPA changes that body's status as a local agency.[15] Prior to the enactment of Act 94, the PUC regulated taxicabs and limousines on an exclusive basis.[16] As noted above, Act 94, in effect, transferred the regulation of the Philadelphia taxicab and limousine industry from the PUC to PPA.[17] In general, for a taxicab or limousine to operate in Philadelphia, it must have a certificate of public convenience issued by PPA. 53 Pa.C.S. §§ 5714(a), 5741(a).

A taxicab or limousine authorized by a certificate of public convenience issued by PPA may transport persons: 1) between points in Philadelphia; 2) from any point in Philadelphia to any point in the Commonwealth; 3) from any point in the Commonwealth to any point in Philadelphia if the request for service for such transportation is received by call to its centralized dispatch system; and 4) from any point in Philadelphia to any point outside the Commonwealth as part of a continuous trip. 53 Pa.C.S. §§ 5714(c), 5741(a.1). Meanwhile, taxicabs which are not authorized by a certificate of public convenience issued by PPA to provide services in Philadelphia, but which hold a certificate of public convenience from the PUC, may still transport persons to Philadelphia and may transport persons from any point in Philadelphia to any point in the Commonwealth beyond Philadelphia if the request for service for such transportation is received by call to its radio dispatch service, without being subject to the regulatory authority of PPA. 53 Pa.C.S. § 5714(d)(1). Similarly, limousines which are not authorized by a certificate of public convenience issued by PPA to provide services in Philadelphia, but which hold a certificate of public convenience from the commission authorizing limousine service elsewhere in the Commonwealth, may still transport persons to Philadelphia and from any point in Philadelphia to any point in the Commonwealth beyond Philadelphia, excluding service from any airport, railroad station and hotel located in whole or in part in Philadelphia,

---

**15.** We note that House Bill 2545, which was recently passed by both the House of Representatives and the Senate, would have amended substantial portions of Chapters 55 and 57 of Title 53 of the Pennsylvania Consolidated Statutes, 53 Pa.C.S. §§ 5501–5517, 5701–5745. *See* House Bill No. 2545 of 2006. These amendments would have made it clear that PPA is to be considered a local agency. However, the Governor ultimately vetoed the bill for unrelated reasons. *See* Press Release, Governor Rendell Vetoes HB 2545, HB 1813 (Oct. 27, 2006), http://papress.state.pa.us/parelease/data/1061027.0028.htm.

**16.** Because the history and background of the PPA and the Parking Authority Law is extensively set out in *City of Philadelphia, supra.,* here we will discuss only the relevant changes brought about by Act 94.

**17.** 53 Pa.C.S. § 5505(d)(23) grants PPA the authority to "act as an independent administrative commission for the regulation of taxicabs and limousine service" in cities of the first class. 53 Pa.C.S. § 5505(d)(24) grants PPA the authority to "investigate and examine the condition and management of any entity providing taxicab and limousine service" in cities of the first class.

without being subject to the regulatory authority of PPA. 53 Pa.C.S. § 5741(a.3).

Furthermore, the legislative findings of the General Assembly provide insight into the purpose of Act 94:

Due to the size, total population, population density and volume of both tourism and commerce of a city of the first class, it may be more efficient to regulate the taxicab and limousine industries through an agency of the Commonwealth with local focus than an agency with diverse Statewide regulatory duties. Well-regulated local focus on improving those industries can be an important factor in the continual encouragement, development, attraction, stimulation, growth and expansion of business, industry, commerce and tourism within a city of the first class, the surrounding counties and this Commonwealth as a whole.

53 Pa.C.S. § 5701.1(3).

With respect to the amount of control the Commonwealth maintains over PPA, PPA is now required to submit an annual budget and fee schedule necessary to advance the purposes of Act 94 to the Appropriations Committees of the Senate and the House of Representatives. 53 Pa.C.S. § 5707. Either body has the power to disapprove of such budget and fee schedule through the adoption of a resolution, but otherwise they will go into effect. *Id.* We do not find this ability to exercise limited fiscal veto power to be any more dispositive of the issue of control than the changes included in Act 22, viz., the transfer from the mayor to the governor of the power to appoint PPA's board and the diversion of PPA's net revenues from the City to the school district. Indeed, we find it to be less significant than those factors, which we rejected in *City of Philadelphia* as a basis to find PPA to be a Commonwealth agency.

Applying this court's analysis in *City of Philadelphia,* as well as the standard set forth in *Gory,* we conclude that Act 94 does not disturb PPA's status as a local authority or agency. In *City of Philadelphia,* we focused on who has the power to create PPA. Act 94, like Act 22 before it, does not "change the fact that it was the City who created PPA or that in cities of the first class-Philadelphia-both then and now, only the city can create a parking authority." *City of Philadelphia,* 837 A.2d at 1273. *See also* 53 Pa.C.S. §§ 5504(a)(1), 5503.

Furthermore, applying the *Gory* test, PPA does not operate on a statewide basis and is not predominantly controlled by the Commonwealth; PPA's authority is limited to taxicabs and limousines that have a nexus to the City, such as a trip that begins or ends there. *See* 53 Pa.C.S. §§ 5714(c), 5741(a.1). Under certain conditions, taxicabs and limousines which are authorized by the PUC or the commission authorizing limousine service elsewhere in the Commonwealth may transport persons to Philadelphia and may transport persons from any point in Philadelphia to any point in the Commonwealth beyond Philadelphia without being subject to PPA's rules and regulations. 53 Pa.C.S. §§ 5714(d)(1), 5741(a.3). Additionally, the legislative findings of the General Assembly illustrate that PPA has a local, as opposed to statewide, focus. *See* 53 Pa.C.S. § 5701.1. As such, PPA does not operate on a statewide basis.

Because nothing in Act 94 changes the analysis which had led this court consistently to conclude that PPA is a local authority for purposes of jurisdiction, we reaffirm those holdings. Consequently, we transfer this matter to the Court of Common Pleas of Philadelphia County.

### ORDER

AND NOW, this 9th day of March, 2007, we hereby transfer the above-captioned matter to the Court of Common Pleas of Philadelphia County.

DISSENTING OPINION BY President Judge COLINS.

I must dissent from the well-presented opinion of the majority. For jurisdictional purposes, the Philadelphia Parking Authority (PPA) is a Commonwealth Agency.

As noted by the majority, Act 22 of 2001 (Act 22) [1], recodified the Parking Authority Law [2] and made dramatic changes to the substance of the law. Act 94 of 2004 [3] effectively transferred the regulation of the Philadelphia taxicab and limousine industry from the Pennsylvania Utility Commission to PPA.

As further noted by the majority:

In general, for a taxicab or limousine to operate in Philadelphia, it must have a certificate of public convenience issued by PPA. 53 Pa.C.S. §§ 5714(a), 5741(a).

A taxicab or limousine authorized by a certificate of public convenience issued by PPA may transport persons: 1) between points in Philadelphia; 2) from any point in Philadelphia to any point in the Commonwealth; 3) from any point in the Commonwealth to any point in Philadelphia if the request for service for such transportation is received by call to its centralized dispatch system; and 4) from any point in Philadelphia to any point outside the Commonwealth as

part of a continuous trip. 53 Pa.C.S. §§ 5714(c), 5741(a.1).

Majority opinion at 220.

The members of the PPA are appointed by the Governor of the Commonwealth and no longer by the Mayor of Philadelphia. Further, the Appropriations Committees of the Senate and House of Representatives have the power to disapprove of the proposed budget of the PPA. 53 Pa.C.S. § 5707.

This case is on all fours with the standards recently enunciated by this Court in *Banacol Marketing Corporation v. Penn Warehousing & Distribution*, 904 A.2d 1043 (Pa.Cmwlth.2006).

For these reasons, I would overrule the preliminary objections.

Judge McGINLEY and Judge SMITH–RIBNER join.

---

1. Act of June 19, 2001, P.L. 289.

2. Act of June 5, 1947, P.L. 458, formerly 53 P.S. §§ 341–356, repealed by Section 3 of Act

22, and recodified as amended at 53 Pa.C.S. §§ 5501–5517.

3. Act of July 16, 2004, P.L. 758.